U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

2025 MAR 24  PM 12: 39

CLERK

BY_____
DEPUTY CLERK

UNITED STATES OF AMERICA,

     Plaintiff,

v.

DALE CHAPPELL,

     Defendant.

**CASE NO. 2:24-CR-00056 — )**

## SUPPLEMENT TO MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE AND OPPOSITION TO GOVERNMENT'S MOTION FOR EXTENSION OF TIME

This supplement informs the Court of two critical developments that further support granting early termination of supervised release:

1. As of March 3, 2025, Chappell has successfully completed sex offender treatment in Vermont after 17 months of treatment, in addition to 9 months of treatment in Florida prior to transferring jurisdictions. USPO is aware of this completion. This treatment is in addition to the multiple rehabilitative programs Chappell has completed, including SOTP-R, SOTP-NR, RDAP, and NRDAP—all of which have been repeatedly recognized as effective in reducing recidivism risk.

2. The U.S. Sentencing Commission (USSC) held public hearings on March 12-13, 2025, receiving testimony from judges, probation officials, public defenders, and policy experts regarding proposed changes to the Sentencing Guidelines, including U.S.S.G. § 5D1.4. This new guideline, set to take effect in November 2025, explicitly urges courts to grant early termination of supervised release more frequently based on an individual's rehabilitation, stability, and risk assessment. Offense conduct is not listed as a factor. The

testimony overwhelmingly confirms that supervised release should focus on the present-day individual, not past offense conduct.

The government's request for an additional 30-day extension, for a total of 60 days, serves no legitimate purpose.[1] The government has provided no valid reason for the delay except to review Chappell's pre-sentence report from 15 years ago—a tactic that contradicts both the statutory purpose of supervised release and the USSC's latest findings. It makes no sense for the government to delay early termination so that it can argue a *pre-sentence* report in a *post-release* proceeding, something that has no bearing on who Chappell is today standing before the court with his request.

The overwhelming evidence, including Chappell's completion of all required treatment and the USSC's new guidance supporting early termination, leaves no justification for prolonging this process. The government's delay tactic should be rejected, and this Court should proceed with deciding the motion for early termination without further delay.

I.    **THE GOVERNMENT'S REQUEST FOR ADDITIONAL TIME IS BOTH UNWARRANTED AND CONTRARY TO THE EVOLVING LEGAL AND POLICY CONSENSUS REGARDING EARLY TERMINATION OF SUPERVISED RELEASE.**

The U.S. Sentencing Commission (USSC) convened public hearings on March 12-13, 2025, to receive expert testimony on proposed amendments to the U.S. Sentencing Guidelines, including the newly drafted U.S.S.G. § 5D1.4, which urges courts to grant early termination more frequently when certain factors are met. Notably, the proposed

---

[1] Though the Court has not ordered a response, the government asserts its response is due by March 26 and claims it did not receive Chappell's PSR until March 14—neither of which the Court required, even if a response was ordered. *See* ECF No. 6 at 1.

guideline reinforces that supervised release should be assessed based on an individual's rehabilitation, stability, and *current* public safety risk.

U.S.S.G. § 5D1.4 proposed by the USSC for November is greatly supported by all the experts, even those traditionally against any relief for offenders. Courts routinely consider proposed guideline amendments when they have broad support, and waiting until November to resolve this motion would waste judicial resources by requiring the same issues to be re-litigated a few months from now. The overwhelming testimony before the USSC makes clear that courts should no longer rely on offense conduct as the deciding factor in early termination proceedings. The government's attempt to delay this decision solely to review offense conduct from 2009 contradicts both the proposed guideline and the expert testimony presented before the USSC.

## A. The Shift Away from Offense Conduct in Supervised Release Decisions

Excerpts of expert testimony before the USSC below make clear that offense conduct should not be the determining factor in an early termination decision. Each of these experts emphasized that courts must assess the individual's current circumstances rather than rely on conduct from years or decades earlier. The government's request for additional time is unnecessary because its intended focus—offense conduct—contradicts both the proposed guidelines and expert testimony on the matter.

3

- (Day Two) 00:42[2] – Joshua C. Lewis, Chief of the Judicial Services Office, Administrative Office of the U.S. Courts

Lewis stated that an individual who has spent years in prison is not the same person who was incarcerated years earlier. His testimony emphasized that courts should assess the whole person before them today, rather than focus on the conduct that resulted in imprisonment years or decades earlier.

- (Day Two) 01:42 – Alison Guernsey, Professor and Clinical Director, University of Iowa College of Law

Guernsey explained that the fact that a term of supervised release was imposed at sentencing does not mean it remains appropriate today. She highlighted the need for courts to reassess whether continued supervision is still necessary, rather than automatically maintaining supervision simply because it was originally imposed.

- (Day Two) 02:25 – Erin Haney, Chief Policy Officer, REFORM Alliance

Haney testified that supervised release is not about punishment, but about reintegration. She argued that courts should not extend supervision based on an individual's past offense but should instead evaluate whether supervision still serves a rehabilitative function.

- (Day Two) 02:31 – Eric E. Sterling, Staff Attorney, Law Enforcement Action Partnership

---

[2] The time stamp is HH:MM of the hearing according to the video track available on YouTube: https://www.youtube.com/watch?v=3pTTiIn9E6A&t=21083s (Day One); https://www.youtube.com/watch?v=AIF4vpjKu5E&t=9602s (Day Two).

4

Sterling stated that in practice, supervised release has become a form of punishment, even though that was not its intended purpose. His testimony highlighted the issue of courts relying on outdated sentencing factors—such as offense conduct— rather than focusing on an individual's present stability and rehabilitation.

## B. Empirical Evidence Showing No Need for Prolonged Supervised Release

The expert testimony below confirms that supervised release beyond a certain point does not serve a rehabilitative or public safety purpose. There is no evidence to suggest that continued supervision is necessary where an individual has already demonstrated stability, and the government's delay is unjustified because the empirical data shows that early termination does not lead to increased recidivism.

- (Day One) 04:56 – Judge Edmond E-Min Chang, Chair of the Criminal Law Committee

Judge Chang pointed to empirical data demonstrating that early termination does not increase recidivism. He highlighted the disparity in early termination rates across different districts and stated that data does not support concerns that releasing individuals from supervision early would pose a risk to public safety.

- (Day Two) 01:42 – Alison Guernsey, Professor and Clinical Director, University of Iowa College of Law

Guernsey reiterated that empirical data show no need for supervised release to protect the public or promote rehabilitation beyond a certain point. Her testimony confirmed that extended supervision often has no meaningful public safety benefit.

5

- (Day One) 05:51 – Kelly M. Barrett, First Assistant Federal Public Defender, District of Connecticut

Barrett noted that most supervised release violations occur within the first year of supervision. She emphasized that individuals who have successfully completed multiple years of supervision without violations are at a low risk of reoffending.

### C. Supervised Release Should Be Rehabilitative, Not Punitive

The testimony below confirms that supervised release should not be used as an additional form of punishment and that early termination should be granted when rehabilitation has been achieved. The government's request for additional time to respond is rooted in an outdated and punitive approach that contradicts the following expert recommendations before the USSC.

- (Day One) 05:24 – Kelly M. Barrett, First Assistant Federal Public Defender, District of Connecticut

Barrett testified that Congress intended supervised release to be rehabilitative, but in practice, it has become punitive. She noted that courts should be granting early termination more frequently when an individual has already reintegrated successfully.

- (Day Two) 02:35 – Erin Haney, Chief Policy Officer, REFORM Alliance

Haney suggested that the USSC should expressly include in the guideline that "extraordinary circumstances" should not be required for early termination. Instead, she argued that the standard should be whether supervised release has served its purpose and whether the individual would continue to do well without it. She suggested this inclusion in the guideline because of some courts adhering to outdated

6

caselaw (pushed by the government) that still require extraordinary reasons for early termination.

- (Day Two) 02:39 – Brett Tolman, Executive Director, Right on Crime

    Tolman pointed out that federal supervised release terms are substantially longer than necessary, even compared to the most conservative state systems. He urged for reforms that would align federal supervision policies with modern sentencing principles, saying that the "sweet spot" for supervision has been proven to be 12 to 18 months.

## D. The Need for Individualized Assessments and Reduction of Unnecessary Supervision

The testimony below confirms that courts should take an active role in determining whether continued supervision is necessary. The proposed guideline U.S.S.G. § 5D1.4 and expert testimony confirm that supervision should end when it no longer serves a function. The government's request for additional time to respond is an unnecessary delay tactic that serves no purpose under modern sentencing policy.

- (Day One) 05:35 – Judge Carlton W. Reeves, Chairman of the USSC

    Judge Reeves questioned why certain prosecutors opposed individualized assessments in early termination cases. He noted that probation officers often defer to the court because they lack the authority to modify supervision terms, highlighting the need for judicial intervention in reviewing early termination requests.

- (Day Two) 01:50 – Kito Bess, Chief U.S. Probation Officer (Ret.)

7

Bess addressed institutional resistance to early termination, stating that more early terminations would impact probation office funding. He argued that reducing the number of individuals on supervision would reduce funding allocations and staffing levels, thereby threatening the jobs of probation officers, as a reason not to promote early termination of supervised release.

- (Day One) 05:30 – Kelly M. Barrett, First Assistant Federal Public Defender, District of Connecticut

Barrett explained that the District of Connecticut does not impose blanket supervised release conditions, such as restrictions on associating with felons because, doing so would prevent successful reintegration. Her testimony reinforced that early termination is warranted, especially in cases with numerous supervised release conditions that serve no purpose other than to send them back to prison.

## II.  COMPLETION OF SEX OFFENDER TREATMENT AND ITS PROVEN EFFECTIVENESS IN REDUCING RECIDIVISM

As of March 3, 2025, Chappell has successfully completed sex offender treatment in Vermont after 17 months of treatment, in addition to the 9 months of treatment completed in Florida prior to his relocation and treatment programs while in prison. The United States Probation Office (USPO) is aware of this completion. Chappell was recognized as a leader in the treatment group, providing guidance and support to others, and was specifically asked by his therapist to continue visiting the group occasionally to assist new participants, which he has agreed to do.

8

This recent completion of sex offender treatment adds to the extensive rehabilitative programs Chappell has already completed, including:

- Sex Offender Treatment Program – Residential (SOTP-R)

- Sex Offender Treatment Program – Non-Residential (SOTP-NR)

- Residential Drug Abuse Program (RDAP)

- Non-Residential Drug Abuse Program (NRDAP)

Each of these programs has played a role in Chappell's successful reintegration and long-term rehabilitation, reinforcing the conclusion that continued supervision is unnecessary.

The effectiveness of sex offender treatment programs in reducing recidivism has been proven time and again through empirical studies and legal precedent. Courts have recognized that treatment programs, particularly those employing cognitive-behavioral therapy and relapse-prevention models, significantly reduce both sexual and nonsexual recidivism. *See United States v. Mudd*, 681 F. App'x 425, 431-32 (6th Cir. 2017) (Merritt, J., concurring) (observing that skepticism regarding sex offender treatment is contradicted by the weight of scientific literature and citing Roger Przybylski, *The Effectiveness of Treatment for Adult Sexual Offenders* (2015),[3] which concluded that "evidence suggests that that [sic] treatment for sex offenders—particularly cognitive-behavioral/relapse-prevention approaches—can produce reductions in both sexual and nonsexual recidivism").

---

[3] http://www.smart.gov/pdfs/TheEffectivenessofTreatmentforAdultSexualOffenders.pdf

Chappell's successful completion of every available treatment program—both in custody and while on supervised release—establishes that he has taken full advantage of rehabilitative opportunities and does not pose any heightened risk requiring continued supervision. The scientific evidence supports that treatment works, and Chappell has completed all available programs to ensure his reintegration and long-term success.

With no remaining treatment requirements, a demonstrated history of compliance, and empirical data confirming that treatment reduces recidivism, there is no justification for prolonging supervision. The Court should deny the government's request for additional time to respond and grant early termination without delay.

Respectfully submitted,

_March 17, 2025_

Date:

Dale Chappell
459 West St.
Rutland, VT 05701
802-404-2750
daleinvermont@gmail.com

## CERTIFICATE OF SERVICE

I affirm, under the penalty of perjury, that this document was mailed to the following on the date below:

United States District Court
P.O. Box 945
Burlington, VT 05402-0945

United States Attorney's Office
P.O. Box 570
Burlington, VT 05402-0570

_March 17, 2025_

Date:

Dale Chappell
459 West St.
Rutland, VT 05701
802-404-2750
daleinvermont@gmail.com