UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
U.S. DISTRICT COURT
DISTRICT OF VERMONT
        FILED
     5/23/2025
BY_____
     DEPUTY CLERK
```

UNITED STATES OF AMERICA    )
                            )
    v.                      )        Case No. 2:24-cr-56 - 1
                            )
DALE CHAPPELL               )

## ENTRY ORDER
## DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE
(Doc. 5)

On February 26, 2025, Defendant Dale Chappell filed a motion seeking early termination of his term of supervised release (Doc. 5), contending such relief is warranted under 18 U.S.C. § 3583(e)(1) because he has "successfully reintegrated into society, established professional and personal stability, and demonstrated that continued supervision is both unnecessary and counterproductive." *Id.* at 7. On March 25, 2025, the government opposed the motion to protect "the safety of the community" because Mr. Chappell "is a contact sex offender" and was indicted in this case while he was serving a probationary sentence in Florida for his underlying contact offense. (Doc. 10 at 1.) The United States Probation Office for the District of Vermont (the "Probation Office") also opposed the motion and advised that its position may change if Mr. Chappell successfully completes additional time on supervised release. On April 2, 2025, Mr. Chappell filed a reply in support of his motion, at which time the court took the motion under advisement.

Mr. Chappell is representing himself. The government is represented by Assistant United States Attorney Jonathan Ophardt.

## I.    Factual and Procedural Background.

On August 24, 2010, in the Middle District of Florida, Mr. Chappell pleaded guilty to one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) & (b)(2). The Presentence Report ("PSR") determined Mr. Chappell's Sentencing Guidelines range was 168 to 210 months. At the October 18, 2010 sentencing

hearing, Mr. Chappell did not object to the PSR's Guidelines calculation, and the parties jointly recommended a fifteen-year sentence. The court sentenced Mr. Chappell to a term of imprisonment of 180 months, followed by a lifetime term of supervised release.

On January 18, 2023, Mr. Chappell was released from the custody of the Bureau of Prisons and began his term of supervised release in the Middle District of Florida. On May 23, 2024, Mr. Chappell's supervision was transferred to the District of Vermont.

The government described Mr. Chappell's history of sex offenses as follows:

> Between January 1, 2003, and December 31, 2005, [Mr.] Chappell repeatedly sexually abused his stepdaughter, who was less than 16 years old at the time. On April 20, 2007, [Mr.] Chappell pleaded guilty in Hernando County, Florida Circuit Court, and received a 15-year probationary sentence with adjudication withheld. [Mr.] Chappell violated his probation on March 5, 2008 and on May 7, 2009, resulting in revocation of his probation and a sentence of 14.7 months in state prison.
>
> [Mr.] Chappell's May 7, 2009 revocation resulted from a new arrest. While on the sex offender registry and serving his state probationary sentence, [Mr.] Chappell possessed over 3,000 images and over 250 videos of child sexual abuse. [Mr.] Chappell also made these images and videos available to others via a peer-to-peer file sharing platform. The images depicted children with penises in their mouths, ejaculate/semen on their bodies, and their genitalia exposed in a lewd and lascivious manner. The images also depicted violent and sadomasochistic themes, with children bound by rope and clothes pins attached to their vaginas and breasts. The National Center for Missing and Exploited Children reported that the known images corresponded to 83 different identified child victims.

(Doc. 10 at 1-2.)[1]

The government recounts the procedural history of Mr. Chappell's underlying case as follows:

> After initially being detained by the State of Florida, [Mr.] Chappell was subsequently indicted by a federal grand jury in the Middle District of Florida on March 31, 2010 for distribution of child sexual abuse materials. He pleaded guilty on August 24, 2010, with both parties agreeing to recommend a 15-year sentence. [Mr.] Chappell did not object to his PSR,

---

[1] The court relies on the government's recitation of the factual and procedural background which Mr. Chappell does not challenge in his reply.

which provided an advisory guideline range of 168 to 210 months' imprisonment, and an advisory guideline range for supervised release of between 5 years (the statutory minimum term) and life. On October 19, 2010, [Mr.] Chappell was sentenced to 180 months of imprisonment to be followed by a lifetime term of supervised release. The sentencing judge specifically articulated at the sentencing hearing why lifetime supervised release was appropriate, citing [Mr.] Chappell's prior violations of probation, the seriousness of child pornography offenses, and the need for the defendant to not have "any doubt in [his] mind" that a violation would result in a return to prison.

While incarcerated, [Mr.] Chappell twice challenged his conviction and sentence pursuant to 18 U.S.C. § 2255, requested compassionate release during COVID, and appealed each of the denials of these motions. In or about September of 2022, [Mr.] Chappell was released to a residential reentry center in Tampa, Florida, and demanded access to the internet at his employment. This request was denied. [Mr.] Chappell was formally released from the custody of the Bureau of Prisons on January 18, 2023, and commenced supervised release. He moved to Rutland, Vermont in or around February of 2024. Thereafter, his supervision was transferred to this [c]ourt in May of 2024.

*Id.* at 2-3 (citations omitted).

## II.    Conclusions of Law and Analysis.

After considering the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), and pursuant to the Federal Rules of Criminal Procedure, the court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]" 18 U.S.C. § 3583(e)(1). The § 3553 factors to be considered include:

(i) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1);

(ii) the need for the sentence imposed "to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id.* § 3553(a)(2)(D);

3

(iii) the "kinds of sentence and the sentencing range established for the applicable category of offense [or violation of probation or supervised release] committed by the applicable category of defendant" under the Sentencing Guidelines, *id.* § 3553(a)(4);

(iv) "any pertinent policy statement issued by the Sentencing Commission," *id.* § 3553(a)(5); and

(v) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" *Id.* § 3553(a)(6).

*United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997). Pursuant to 18 U.S.C. § 3156(a)(4)(C), Mr. Chappell's underlying offense is considered a "crime of violence[.]" *See also United States v. Bonczek*, 2009 WL 2924220, at *1 (S.D.N.Y. Sept. 8, 2009) ("Possession and receipt of child pornography are, by definition, crimes of violence.").

Early discharge is appropriate to "account for new or unforeseen circumstances" not contemplated at the initial imposition of supervised release, but it is only "[o]ccasionally" justified due to "changed circumstances" such as "exceptionally good behavior[.]" *Lussier*, 104 F.3d at 36. Changed circumstances justifying early termination include a defendant's exceptionally good behavior that makes the previously imposed term of supervised release "either too harsh or inappropriately tailored to serve the general punishment goals of Section 3553(a)." *Id.* However, "compliance with the terms of a defendant's supervision, by itself, does not entitle a defendant" to modification. *United States v. Black*, 2013 WL 2527371, at *3 (W.D.N.Y. June 10, 2013). "[T]he determination of early release is a discretionary decision made by the district court." *United States v. Sheckley*, 129 F.3d 114, 114 (2d Cir. 1997) (unpublished opinion); *see also United States v. Trotter*, 321 F. Supp. 3d 337, 359 (E.D.N.Y. 2018) (same).

Contrary to Mr. Chappell's contentions, the sole purpose of supervised release is not a "structured opportunity to support reentry" or "a tool to support rehabilitation and reintegration." (Doc. 15 at 4, 7.) Supervised release is also intended to protect the public from future crimes by a defendant as well as other sentencing goals. The presiding judge in his case determined that a lifetime term of supervised release was sufficient, but not greater than necessary. This court may modify that term, but it should not do so without

4

considering an array of factors including not only a defendant's rehabilitation and reintegration into society, but remaining risks to public safety and vulnerable populations.

The Guide to Judiciary Policy, Vol. 8E, Ch. 3 § 360.20(a) notes that, under 18 U.S.C. § 3583(e)(1), the court may terminate the terms of supervised release in felony cases after the expiration of one year of supervision if satisfied that such action is warranted by the conduct of the offender and is in the interest of justice. That section also advises that probation officers should not recommend persons for early termination who have an identified higher risk to community safety. The Guide to Judiciary Policy § 360.20(c) indicates that, after eighteen months of supervision have elapsed, there is a presumption in favor of recommending early termination for persons who meet the following criteria:

> (1) The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) or **has not committed a sex offense** or engaged in terrorism;
>
> (2) **The person presents no identified risk of harm to the public or victims;**
>
> (3) **The person is free from any court-reported violations over a 12-month period;**
>
> (4) **The person demonstrates the ability to lawfully self-manage beyond the period of supervision;**
>
> (5) **The person is in substantial compliance with all conditions of supervision;** and
>
> (6) The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

Guide to Judiciary Policy § 360.20(c) (emphasis supplied).

During his term of imprisonment, Mr. Chappell states he completed numerous rehabilitative programs.[2] Since his release approximately twenty-seven months ago, the Probation Office advises and the government concedes that "his compliance to date [with

---

[2] Mr. Chappell states that he completed the following rehabilitative programs: Sex Offender Treatment Program – Residential, Sex Offender Treatment Program – Non-Residential, Residential Drug Abuse Program, and Non-Residential Drug Abuse Program.

the terms of his supervised release] is unquestioned." (Doc. 10 at 4-5.) On March 3, 2025, he completed group treatment with Kimberly Rider, M.S., and has transitioned to individual treatment. During group sessions, he demonstrated leadership qualities and assisted others in treatment, including assisting a group member with an anger management project.

Mr. Chappell is gainfully employed and owns his own consulting firm, has stable housing, and has provided urinalysis tests which have been negative for illicit substances. He has not failed any polygraphs, and he is in compliance with his SORNA requirements. Mr. Chappell has two monitored devices through IPPC which have presented no issues.

On the other hand, Mr. Chappell was convicted of possessing child pornography while he was on supervision for a prior conviction of a contact sexual offense. He thus has an identifiable higher risk to community safety, especially to vulnerable minor victims. He has been on supervised release for a small fraction of his lifetime term of supervised release. The seriousness of his offense which took place on supervision renders him an inappropriate candidate for early termination pursuant to the Guide to Judiciary Policy. Although the court commends Mr. Chappell for his full engagement in treatment and his successful reintegration into society thus far, serious risks of recidivism and public safety concerns remain.

After considering the statutory factors, the court concludes that early termination of supervised release is not warranted at this time. *See United States v. Melvey*, 2018 WL 6624193, at \*2 (E.D.N.Y. Dec. 18, 2018) (quoting *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)) ("Termination of [defendant's] supervised release is premature. While his post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule."). If Mr. Chappell successfully completes an additional period of compliance with the terms of his supervised release, he may refile a motion to terminate his supervision at that time.

6

## CONCLUSION

For the foregoing reasons, the court hereby DENIES WITHOUT PREJUDICE Mr. Chappell's motion for early termination of supervised release (Doc. 5).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _22ⁿᵈ_ day of May, 2025.

Christina Reiss, Chief Judge
United States District Court